**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| United States of America <u>ex. rel.</u> **OLUBOBA MOHAMMED** Petitioner  v.  **DAVID C. FREEMAN, Warden, Taylorville Correctional Center,** Respondent. | ) ) ) ) ) ) No. 03 C 524 ) ) HONORABLE DAVID H. COAR ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is the 28 U.S.C §2254 petition for the writ of habeas corpus filed by Oluboba Mohammed ("Petitioner"). For the reasons stated below, this petition is DENIED. Petitioner's motion to file additional authority is GRANTED. Petitioner's motion to refile part of the record is GRANTED. All other motions are MOOT and TERMINATED. This case is CLOSED.

**PROCEDURAL BACKGROUND[1]**

On October 7, 1993, on-duty Chicago Police officers Paul Cardon, Tom Carvice, Edison Dantes, and Mark Van Guison received a radio dispatch reporting that drugs were being sold in Apartment 512, 1415 W. Lunt Street, in Chicago. The officers went to the apartment building,

---

[1] Unless rebutted by clear and convincing evidence, findings of fact made by the state courts in this case are presumed to be correct. *See Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

and positioned themselves in a stairwell near the unit in question. From their vantage point, they could peer into the well-lit hallway outside of Apartment 512.

Soon after, Cardon saw Petitioner walk past the stairwell and into the apartment. Petitioner carried a large, black suitcase with him. After Petitioner went inside the apartment, Cardon and the other officers knocked on the door. When Petitioner answered the door, Cardon identified himself as a police officer, told Petitioner that he and his fellow officers were conducting a drug investigation, and asked if he and the other officers could enter the apartment. Petitioner let the officers into the apartment.

Once inside, Cardon saw that the suitcase Petitioner had been carrying was on the living room floor, a "few feet" away from Petitioner. When Cardon asked Petitioner about the suitcase, Petitioner explained that he did not own the suitcase, it belonged to his friend G.D., and that G.D. asked Petitioner to bring the suitcase to the apartment. When Cardon asked to see inside the suitcase, Petitioner opened it. Inside the suitcase were men's clothes that appeared to be Petitioner's size and a white plastic bag that appeared to have lumps in it. Cardon asked Petitioner what was in the bag. The record is unclear as to whether Petitioner remained silent or answered that he did not know what was in the bag. In any event, Petitioner then opened the bag. Inside the bag were eight clear packages containing a white powder that Cardon believed to be drugs.[2] Also in the suitcase was over $5,000 in U.S. currency, primarily in twenty dollar bills.

At that point, the officers arrested Petitioner. On the ride to the police station, the officers learned that Petitioner was born in Nigeria and possessed a Virginia driver's license.

---

[2]The parties later stipulated that the white substance was 778.68 grams of heroin.

During the closing arguments of Petitioner's trial, the prosecutor told the jury, "There are three pieces of key evidence that I want you to take together to draw a conclusion; that suitcase, that Virginia driver's license and the defendant's nationality. Taken together we know–" At that point, the defense attorney objected and his objection was overruled. The prosecutor continued, "The defendant has no ties that he demonstrated to those officers to the Chicago area, to Cook County, to our community and to our lives."

Later, the prosecutor stated that "Today is the day that you make the taking [of the drugs by the police] final, that you tell these officers that they did a good job and that they did the right thing and that they acted on behalf of us on [sic] a community. We hear a lot *** about this war on drugs. And it seems huge and it seems overwhelming, and it seems a lot like we are losing or that there is no answer. The war on drugs is one step at a time."

Petitioner's counsel responded in his closing argument: "I'm not quite sure what the State was saying about his nationality because he is from a foreign country does that make him guilty? Does that mean that he is guilty of carrying or knowing that he is carrying drugs around because he is from Nigeria? *** The fact that he was born in Nigeria, he had a Virginia driver's license, our client did not testify. And you will hear from the Judge *** that doesn't mean anything. You cannot use that against him. The fact that he did not testify, because the burden is not on the defense."

In its rebuttal, the State argued, "Well, the only person that knows where this G.D. exists is the defendant. The only testimony that you heard today was what he was coming from [sic] that witness stand." Petitioner's counsel objected; the court overruled the objection. The

prosecutor continued, "And what you see in any of the exhibits. That's the testimony. You can come up with hypotheticals until pigs fly *** it's not evidence."

In her rebuttal, the prosecutor went on to add, "[A] million dollars of cocaine when it hit the street is not on the street *** because these police officers and this tactical unit did exactly what they were supposed to do. They investigated a complaint and they got a million dollars worth of heroin off the street. And ladies and gentleman, to maintain police officers being able to do that and to tell mid-level dealers like the defendant that they have to stop[,] *** find him guilty of possession with the intent to deliver over four hundred, less than nine hundred grams of heroin."

The jury found Petitioner guilty. On January 10, 1998, he was sentenced to 20 years of incarceration, to run concurrently with a sentence imposed by a federal district court in Texas.

Petitioner's appellate counsel filed a direct appeal based solely on an insufficiency of evidence argument and lost. Petitioner attempted to file a supplemental pro se brief, which the state appellate court did not allow. Petitioner did not file for further review in the Illinois Supreme Court. Instead, on July 19, 1999, he filed a petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*. In the petition, he alleged that his trial and appellate counsel were both ineffective, and raised a claim of prosecutorial misconduct.

The circuit court dismissed the post-conviction petition as frivolous and patently without merit. Petitioner, with the assistance of appellate counsel, appealed the dismissal. Appellate counsel briefed two distinct issues. First, counsel argued that the dismissal of Petitioner's post-conviction petition under state law violated the single subject rule of the Illinois constitution.

Second, counsel argued that the trial court's dismissal of Petitioner's post-conviction petition–including dismissal of a claim related to prosecutorial misconduct–should have been reversed as it was not frivolous. The appellate court affirmed the dismissal. Petitioner's post-conviction appellate counsel then filed a petition for leave to appeal to the Illinois Supreme Court, preserving the prosecutorial misconduct claim. Petitioner also was granted leave to file a pro se supplemental brief in support of the petition for leave to appeal. In his supplemental brief, Petitioner argued that his counsel on direct appeal was ineffective for failing to argue that the trial court erred when it denied a motion to suppress the evidence found as a result of the police search and that the appellate court erred during post-conviction review by failing to acknowledge the claim of prosecutorial misconduct that was mentioned in the post-conviction petition but not included in Petitioner's appellate brief. The Illinois Supreme Court denied the petition for leave to appeal.

On January 22, 2003, Petitioner filed a habeas petition in this Court.

## HABEAS CORPUS STANDARDS

Federal courts may not grant a writ of habeas corpus to a prisoner held under a state court judgment unless custody of the prisoner violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254 (a); *Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002). Moreover, before a federal court will grant a habeas petition, the petitioner must both exhaust state remedies and comply with state rules regarding procedural default. *Mahaffey*, 294 F.3d at 914-915. Habeas corpus petitioners exhaust all of their state court remedies when: (1) they present them to the highest court of the state; or (2) no state remedies remain available to the petitioner at the time that the petition is filed. *See Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).

Procedural default occurs either when (1) a petitioner fails to raise an issue on direct appeal or post-conviction review, *see Farrell*, 939 F.2d at 410; or (2) the state court clearly relies on a state procedural bar as an independent basis for its denial of relief. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). In order to avoid procedural default, a petitioner must fairly present the claim "at each and every level in the state court system…" *See Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-845 (1999)). As the Seventh Circuit has noted, "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at *each level* of state court review has procedurally defaulted that claim." *Lewis*, 390 F.3d at 1026 (internal citations omitted) (emphasis added).

If a petitioner has procedurally defaulted on any claim, this Court can only grant relief if (1) there is adequate cause for his failure to raise the claim in state court and prejudice resulting from the default, *see Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); or (2) default would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Even where a federal court reaches the merits of a petitioner's claim, relief is only warranted in certain circumstances. To prevail, a habeas corpus petitioner must show that adjudication of the case resulted in a decision that was:(1) contrary to, or (2) an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or, (3) based on an unreasonable interpretation of the facts in light of the evidence presented in the state-court proceedings. 28 U.S.C. §2254(d). The first ground pertains to pure questions of law. *See Lindh v. Murphy*, 96 F.3d 856, 868-69 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). The second ground pertains to mixed questions of law and fact. *Id*. at 870. To

warrant relief, the state-court error must be "grave enough to be called 'unreasonable.'" *Id*. A state-court conclusion will stand if it is "one of several equally plausible outcomes." *Hall v.Washington*, 106 F.3d 742, 749 (7th Cir. 1997). A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Finally, the third ground contemplates relief only where the facts are, by "clear and convincing evidence," demonstrably wrong. See 28 U.S.C. § 2254(e)(1). State court factual determinations are presumed to be correct, although a petitioner may rebut that presumption with clear and convincing evidence. *Mahaffey*, 294 F.3d at 915; 28 USC §2254(e)(1).

## ANALYSIS

Petitioner offers three possible grounds for habeas relief. First, he argues that his counsel on direct appeal was ineffective for failing to appeal the trial judge's refusal to suppress evidence from the search ("ground one"). Second, he argues that his Fourth Amendment rights were violated when the police, with his consent searched the apartment and the suitcase and later arrested him ("ground two"). Third, he claims that the reason he was found guilty by the jury was because of prosecutorial misconduct and that appellate counsel was ineffective for failing to raise the prosecutorial misconduct argument in his direct appeal ("ground three").

### *Grounds I and II*

Petitioner did not fairly present either ground one or ground two to the appellate court for review; as a result, they are procedurally defaulted. "Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d

1019, 1025 (citing *Boerckel*, 526 U.S. at 845). In order to satisfy the requirement of fair presentment, the Seventh Circuit requires a petitioner to "raise the issue at each and every level in the state court system…" *Id.*

The Seventh Circuit's decision in *Howard v. O'Sullivan* provides a helpful framework for analyzing Petitioner's presentment of the issues related to grounds one and two. *See Howard v. O'Sullivan,* 185 F.3d 721 *(*7th Cir. 1999). In *Howard*, the petitioner pursued both direct and collateral proceedings all the way to the Illinois Supreme Court, but still procedurally defaulted his ineffective assistance claim. The *Howard* petitioner presented a claim regarding the ineffective assistance of his original trial counsel in his request for post-conviction relief. That claim, however, was never presented to the appellate court. The Seventh Circuit determined that "by changing the basis of his argument between the trial court and the appellate court, Howard did not fairly present the question of ineffective assistance of trial counsel to the appellate court. Accordingly, he has procedurally defaulted that claim." *Id*. at 725. Howard's discussion of the claim in his post-conviction relief petition was not enough: "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* (citing *Boerckel*, 526 U.S. at 845). The Seventh Circuit also clarified that fair presentment requires petitioners to give state courts "a meaningful opportunity" to review the claims later presented in federal court. *See Howard*, 185 F.3d at 725.

Petitioner did not raise the issues related to ground one or ground two at each and every level in the state court system. While Petitioner did raise the issue of ineffective appellate counsel as it relates to ground one in his original petition for post-conviction relief, he then failed

to present the claim to the appellate court. As a result, the appellate court did not hear either claim at any point in time.

Petitioner's Fourth Amendment claim is slightly more complicated in that he did at least attempt to present it to the appellate court on direct appeal by filing a motion for permission to submit a pro se supplementary brief that hinted at his claim. The appellate court denied the motion, however, after noting that Petitioner's counsel had already submitted an appellate brief. The court was presumably following state precedent found in cases like in *People v. McDonald*, 660 N.E.2d 832 (1995). In *McDonald*, the Illinois Supreme Court determined that defendants in non-capital cases did not have a right to both self-representation and assistance of counsel.

Given that the state court determined that a pro se supplemental brief was not appropriate, this Court will not now determine that Petitioner's motion for permission to submit a pro se supplemental brief fairly presented issues related to ground two such that Petitioner has avoided procedural default. Petitioner could have remedied the problem by presenting the Fourth Amendment claim in his post-conviction appeal, but he failed to do so. Given that he did not present the Fourth Amendment claim to the appellate court in accordance with appellate court procedures, he has procedurally defaulted the claim.[3]

Petitioner argues that by presenting issues related to both ground one and ground two in his supplemental petition for leave to appeal to the Illinois Supreme Court, he has avoided

---

[3] Even if petitioner had not defaulted the claim, it is patently without merit. The evidence indicated that Petitioner consented to the search of the apartment and the search of the suitcase. In his own briefing, Petitioner agrees that he consented to the search but claims that he was coerced and that submission to the search was not an act of free will. Petitioner did not prove such coercion at trial, nor does he present evidence that could prove such coercion now. His claim is without merit.

procedural default. But a discretionary appeal in the last stages of a post-conviction review cannot satisfy the requirement that the claim be fairly presented "at each and every level in the state court system…" *See Lewis v. Sternes*, 390 F.3d 1019, 1025 (citing *Boerckel*, 526 U.S. at 845). As the Seventh Circuit has noted, "[a] habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at *each level* of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, at 1026 (emphasis added)(citations omitted).[4]

Federal review of Petitioner's claims on Counts I and II are barred unless Petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner does not present argument supporting either possibility. As such, his petition for relief as to grounds one and two is DENIED.

## *Ground III*

As his third ground for habeas relief, Petitioner argues both that the prosecutor's comments at trial were improper and that his lawyer on direct appeal was ineffective for failing to raise the issue of the improper comments.

When determining whether a prosecutor's comments denied a defendant a fair trial, the court reviews the comments "first in isolation to determine whether they stayed within proper

---

[4]Petitioner also argues that by presenting a supplemental brief on the Fourth Amendment issue to the appellate court during direct review, he has avoided procedural default. The appellate court, however, did not grant Petitioner leave to file the supplemental brief after noting that public defender had already filed a brief in the case.

bounds." *See United States v. Mietus*, 237 F.3d 866, 870 (7th Cir. 2001)(citing *United States v. Cotnam*, 88 F.3d 487, 498 (7th Cir. 1996)). If the comments were improper, "the next step in the analysis depends on whether the impropriety violated one of the defendant's specific trial rights, such as the Fifth Amendment right against self-incrimination, or whether it reflected more general prosecutorial misconduct....which could deprive the defendant of her due process right to a fair trial." *Id.*

*Comments on Petitioner's Failure to Testify*

Petitioner argues that the prosecutor improperly remarked upon his failure to take the stand. The prosecutor stated, "Well, the only person that knows where this G.D. exists is the defendant. The only testimony that you heard today was what he was coming from [sic] that witness stand." Petitioner's counsel objected; the court overruled the objection. The prosecutor continued, "And what you see in any of the exhibits. That's the testimony. You can come up with hypotheticals until pigs fly *** it's not evidence." According to Petitioner, prosecutor's comments highlighted his failure to testify and therefore violated his Fifth Amendment right against self-incrimination.

Prosecutors violate the Fifth Amendment by making either direct or indirect comments that invite the jury to draw an adverse inference from a defendant's failure to testify. *See Mietus*, 237 F.3d at 871. Indirect comments violate the Fifth Amendment only if "(1) the prosecutor manifestly intended to refer to the defendant's silence or (2) a jury would naturally and necessarily take the remark for a comment on defendant's silence." *Mietus*, 237 F.3d at 871, citing *United States v. Butler,* 71 F.3d 243, 254 (7th Cir. 1995). Moreover, "[a] prosecutor's comment that the government's evidence is uncontradicted or unrebutted will violate this rule

only if the only person who could have rebutted the evidence was the defendant." *Mietus*, 237 F.3d 871, citing *United States v. Aldaco*, 201 F.3d at 987. When deciding whether the Petitioner's Fifth Amendment rights were violated, the offending statements "should be analyzed in context." *Mietus*, 237 F.3d 871, citing *United States ex. rel. Lee v. Flannigan*, 884 F.2d 945, 954 (7th Cir. 1989).

The prosecutor's comments regarding Petitioner's failure to testify were improper. The statement that "the only person that knows where this G.D. exists is the defendant" is the kind of comment that highlights the fact that only Petitioner could have rebutted the evidence presented and would lead a jury to question Petitioner's decision to remain silent. The statement that the only testimony came from the witness stand–in light of the fact that Petitioner did not testify and the preceding comment about G.D.–does indicate that the prosecutor manifestly intended to refer to the defendant's silence.

Even though the prosecutor's comments were improper, however, the error in this case was harmless. In cases where a specific trial right is violated, "the court may hold the error harmless and uphold the conviction only if the government proves beyond a reasonable doubt that the defendant would have been convicted absent the unconstitutional prosecutorial comments." *Cotnam*, 88 F.3d at 500 (citations omitted). The statements were isolated, the jury was instructed to ignore them, and the evidence presented indicated beyond a reasonable doubt that Petitioner was guilty.

When reviewing the comments, the appellate court concluded, "Although we do not condone such a comment, based on the isolated nature of the comment and proper instructions to the jury, we find that any error in allowing the comment was not so prejudicial as to justify

reversing defendant's conviction or finding that defendant's appellate counsel was ineffective in failing to raise the comment as an issue on direct appeal." This determination is neither unreasonable nor contrary to established law. A jury could have found beyond a reasonable doubt that the Petitioner was guilty as charged based on the evidence presented, including evidence that four police officers saw Petitioner carry a suitcase into an apartment where drugs were reportedly being sold, saw a substance that appeared to be drugs in the suitcase, and later learned that the substance was heroin. Petitioner is not entitled to habeas relief on this claim.

*General Prosecutorial Misconduct*

First, this court must review the remarks related to a claim of general prosecutorial misconduct to determine if they are improper. Then, in cases where the petitioner raises a claim of general prosecutorial misconduct, the court should "consider the remarks in light of the entire record to determine if the defendant was deprived of a fair trial; that is, the court should determine "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Mietus*, 237 F.3d at 871, citing *Darden v. Wainwright*, 477 US 168, 181 (1986). When reviewing the improper remarks, a court must look at five factors: "(1) the nature and seriousness of the prosecutorial misconduct; (2) whether the prosecutor's statement was invited by the conduct of defense counsel; (3) whether the trial court's instructions to the jury were adequate; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant. *See Aliwoli v. Carter*, 225 F.3d 826, 829-830 (7th Cir. 2000) (*citing United States v. Butler*, 71 F.3d 243, 254 (1995).

*Comments related to Petitioner's license and place of birth*

Petitioner claims that the prosecutor's comments regarding the fact that he had a Virginia driver's license and that he was Nigerian were improper. The state has consistently argued that the references to Petitioner's nationality and state of residence were meant to highlight circumstantial evidence proving that Petitioner was in Chicago solely for the purpose of selling or transporting drugs rather than indicating that Petitioner should have been found guilty because he was born in Nigeria or because he had a Virginia driver's license. After highlighting that Petitioner was neither born in Illinois nor a current resident, the prosecutor immediately followed the comment by saying, "The defendant has no ties that he demonstrated to those officers to the Chicago area, to Cook County, to our community and to our lives."

The appellate court determined that the references to the license and to Nigeria were not improper. According to the state court, the record suggested that "the State made the comments to inform the jury that it could consider the place of defendant's residence and birth as circumstantial evidence that he was in Chicago to sell drugs or act as a courier for the drugs he was carrying."

The references to the driver's license were not improper and do not give rise to a ground for habeas relief. The references to Nigeria, by comparison, are more troubling. While the comment did not directly state that Petitioner is more likely to be a drug dealer because he is Nigerian, this Court does wonder why the prosecutor thought the fact that Petitioner was a Nigerian national was relevant to the charges in the case.

Even if the prosecutor's remarks about Nigeria were improper, however, they were not "so inflammatory as to prejudice the defendant." The Seventh Circuit was confronted with a more direct link between nationality and guilt in *United States v. Hernandez*. *See United States*

*v. Hernandez* 865 F.2d 925 (1989). In that case, the Court of Appeals determined that a reference to "Cuban drug dealers" was indefensible, given that the Constitution "prohibits a prosecutor from making race-conscious arguments since it draws the jury's attention to a characteristic that the Constitution generally demands that the jury ignore." *Hernandez*, 865 F.2d 925, 928 (cites omitted). The Seventh Circuit went on to determine that while the remark was inappropriate, "within the context of the entire trial, the remark was not so inflammatory as to prejudice the defendant." *Id.*

The remarks in this case were less direct and less inflammatory. When viewed in context of the entire trial, they did not prejudice Petitioner. The evidence against Petitioner was quite convincing: he was seen entering an apartment with a suitcase, he consented to police entry of the apartment, and then consented to a police search of the suitcase. A search of the suitcase yielded heroin. The jury could have inferred beyond a reasonable doubt that Petitioner was guilty as charged. The comments did not misstate the evidence, nor did they implicate specific trial rights. While they were not an "invited response" to the arguments of defense counsel, the defense counsel did have the opportunity to respond and in fact did respond at length. Defense counsel told the jury during his rebuttal: "I'm not quite sure what the State was saying about his nationality because he is from a foreign country does that make him guilty? Does that mean that he is guilty of carrying or knowing that he is carrying drugs around because he was born in Nigeria?** The fact that he was born in Nigeria, he had a Virginia driver's license, our client did not testify. And you will hear from the Judge *** that doesn't mean anything. You cannot use

that against him."[5]  In light of all these factors, it does not appear that Petitioner was denied a fair trial on the basis of the prosecutor's comments on Nigeria.  The lack of prejudice against Petitioner for these comments prevents this Court from granting habeas relief.

*Comments related to Police Efforts and War on Drugs*

Petitioner argues that the prosecutor's comments related to the war on drugs were improper and unfairly prejudiced him.  The prosecutor stated in her closing argument: "Today is the day that you make the taking [of the drugs by the police] final, that you tell these officers that they did a good job and that they did the right thing and that they acted on behalf of us on [sic] a community.  We hear a lot *** about this war on drugs.  And it seems huge and it seems overwhelming, and it seems a lot like we are losing or that there is no answer.  The war on drugs is one step at a time."  The prosecutor also stated: "[A] million dollars of cocaine when it hit the street is not on the street *** because these police officers and this tactical unit did exactly what they were supposed to do.  They investigated a complaint and they got a million dollars worth of heroin off the street.  And ladies and gentlemen, to maintain police officers being able to do that and to tell mid-level dealers like the defendant that they have to stop[,] *** find him guilty of possession with an intent to deliver over four hundred, less than nine hundred grams of heroin."

The appellate court concluded that the comments related to the police and the war on drugs were not improper.  The court reviewed existing Illinois case law, and determined that the "single comment that referred to the duties of the police" was not "in the nature of the repeated

---

[5]This Court does not have before it evidence regarding whether the trial judge gave any instruction to the jury with respect to the comments based on Petitioner's place of birth.  Even if the judge did not, however, the other factors provide sufficient justification for the conclusion that Petitioner was not deprived of a fair trial.

'personalized threatening' comments" that were impermissible under Illinois law. The court determined that Illinois law permitted a prosecutor to comment, in certain instances, on the war on drugs. The court concluded that comment was not prejudicial and did not "support defendant's claim that his appellate counsel should have raised the comment as a basis for reversible error." Likewise, the Seventh Circuit has determined that references to the war on drugs are not per se improper. *See, e.g., U.S. v. Anderson*, 61 F.3d 1290, 1300 fn. 6 (7th Cir.,1995) (gathering cases). The prosecutor's reference to police duties, while certainly not ideal (or, for that matter, compelling), is not, as the state court noted, so egregious as to be impermissible. The state court's decision is neither contrary to nor employs an unreasonable application of federal law. Consequently, Petitioner is not entitled to federal habeas relief.

## Conclusion

For the foregoing reasons, Petitioner's request for habeas corpus relief is DENIED. This case is CLOSED. Petitioner's motion to file additional authority is GRANTED. Petitioner's motion to refile part of the record is GRANTED. All other motions are MOOT and TERMINATED. This case is CLOSED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **3/11/05**